## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JACKIE JOHN BLACKWOOD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) Case No. CIV-14-910-STE |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Supplemental Security Income benefits (SSI) under the Social Security Act. The Commissioner has answered and filed the administrative record (hereinafter TR. ____). Both parties to the proceedings have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of a final judgment. Upon review of the pleadings, the record, and the parties' briefs, the Commissioner's decision is **REVERSED AND REMANDED** for further proceedings consistent with this Memorandum Opinion.

### I. PROCEDURAL HISTORY

Plaintiff filed his application for SSI alleging disability beginning December 1, 2009. (TR. 14). The application was denied on initial consideration and on reconsideration at the administrative level. At Plaintiff's request, the Administrative Law Judge (ALJ) held a *de novo* hearing on January 30, 2013. (TR. 32-58). Plaintiff appeared with counsel and testified in support of his application. A vocational expert (VE) and a medical expert (ME)

also testified at the request of the ALJ. The ALJ issued his decision on February 19, 2013, finding that Plaintiff was not disabled. (TR. 14-25). The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. (TR. 4-6). This judicial appeal followed.

## II. THE ADMINISTRATIVE DECISION

In addressing Plaintiff's disability application, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from his onset date. (TR. 16). At step two, the ALJ concluded that Plaintiff has severe impairments including obesity, depression, a learning disorder and borderline intellectual functioning. (TR. 16). At step three, the ALJ found that Plaintiff does not have a physical or mental impairment or combination of impairments that meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, App'x. 1 (TR. 17).

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: the claimant can lift and/or carry 50 pounds occasionally and lift and/or carry 20 pounds frequently; no postural limitations; no manipulative limitations; no environmental limitations; no visual limitations; no jobs that require complex written or verbal communications; the claimant can perform simple, routine, repetitive tasks; work environment free of any fast paced production requirements; simple work related decisions; low stress that means having only occasional decisionmaking requirements with occasional changes in the work setting; no tandem or team work; and only occasional contact with the public.

(TR. 19). At the second phase of step four, the ALJ determined Plaintiff had no past relevant work. (TR. 23).

2

At step five, the ALJ considered the testimony of the VE and determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform including hand packager, laundry worker, janitor, shoe packer, cleaner and stock clerk/order filler. (TR. 24). Thus, at step five of the sequential evaluation, the ALJ determined Plaintiff is not disabled.

## III.  ISSUE PRESENTED

The issue before the court is whether the ALJ's finding that Plaintiff's impairments do not meet the requirements of Listing 12.05(C) for mental retardation[1] is legally sound and supported by substantial evidence in the record.

## IV.  STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## V.  ANALYSIS

To understand the parties' arguments, it is necessary to consider the unique structure of Listing 12.05, compared with the other mental impairments listed in section 12.00. To meet the requirements for other mental disorders, a claimant must first produce evidence of the medically determinable impairment described in paragraph A of

---

[1] The Commissioner notes that on September 3, 2013, the Social Security Agency replaced the term "mental retardation" with "intellectual disability" in the Listings used to evaluate claims of mental disorders. The Commissioner has elected to use the term in effect when the ALJ issued his unfavorable decision. This court will do the same.

each listing. Additionally, the claimant must produce evidence that the medically determinable impairment meets the criteria of either paragraph B or paragraph C, which "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." 20 C.F.R. Part 404, Subpart P, App'x. 1, § 12.00(A). Paragraph B requires two or more marked functional limitations in activities of daily living, social functioning, or concentration, persistence or pace, or one marked impairment plus repeated episodes of decompensation. The requirements of paragraph C vary, depending on the specific mental impairment.

> But § 12.05 is unique:
>
> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(A) (2012).

To meet Listing 12.05 for mental retardation, a claimant's mental impairment must be sufficiently severe to meet the "capsule" definition of mental retardation

included in the introduction to Listing 12.05, as well as the specific requirements of either 12.05(A), 12.05(B), 12.05(C) or 12.05(D). *See Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). In this case, the relevant section is 12.05(C).

The capsule definition includes two requirements. First, a claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning[.]" Second, a claimant must demonstrate his mental impairment "initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R., pt. 404, Subpt. P, App'x. 1 § 12.05.

To meet the specific requirements in 12.05(C), a claimant must also demonstrate the severity of his mental impairment with objective testing resulting in "a valid verbal, performance, or full scale IQ of 60 through 70." Additionally, the claimant must demonstrate he has "a physical or other mental impairment imposing additional and significant work-related limitation or function." *Id.* at § 12.05(C).

The ALJ did not discuss the evidence he relied on in summarily finding Plaintiff's impairments did not meet the requirements of Listing 12.05(C):

> [T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The Administrative Law Judge finds that the capsule definition of mental retardation is not met since there is no evidence the claimant had deficits in adaptive functioning manifested prior to age 22.

(TR. 19). The ALJ's summary conclusion merely stated his finding; the ALJ did not specify which part or parts of the capsule definition or which part or parts of the specific requirements of Listing 12.05(C) are inadequate to meet the listing, nor did he cite to

5

the record for evidence supporting his conclusion. To affirm the Commissioner's final decision, this Court would have to supply its own explanations or adopt those suggested by the Commissioner. But this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself. *Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007). *See also Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's post-hoc effort to salvage the ALJ's decision would require court to overstep its institutional role and usurp essential functions committed in the first instance to the administrative process).

Plaintiff points to evidence demonstrating his mental and physical impairments meet the specific criteria of Listing 12.05(C). Plaintiff's argument is convincing.

M. Gerald Ball, Ph.D., tested Plaintiff's verbal, performance, and full-scale IQ by administering the Weschsler Adult Intelligence Scale-III (WAIS-III) during a consultative examination. This testing resulted in a verbal IQ score of 69, a performance IQ score of 91, and a full scale IQ score of 77. (TR. 18, 270). Dr. Ball also tested Plaintiff's reading ability and determined Plaintiff reads at the third grade level. (TR. 270). In his decision, the ALJ offers no explanation as to why Plaintiff's verbal IQ score of 69 should not be considered a "valid verbal IQ score of 60 through 70."

Moreover, the ALJ himself found Plaintiff to have other "severe" impairments at step two of the sequential evaluation. A "severe impairment" by definition is an impairment "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The Commissioner does not dispute this evidence or

otherwise allege Plaintiff's impairments do not meet the specific criteria in Listing 12.05(C).

But the Commissioner does contend that the ALJ reasonably found Plaintiff had failed to demonstrate his mental impairment met the requirements set forth in the capsule definition: specifically, that his adaptive deficits prior to age 22 were severe enough to satisfy that portion of the capsule definition. (ECF No. 25:9-11). The Commissioner notes the ALJ had previously discussed factors generally contained in the paragraph B requirements of other mental impairments and had determined Plaintiff had only moderate restrictions in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation. (TR. 18). But these factors are included in the specific requirements of Listing 12.05(D) and are inapplicable to 12.05(C). Thus, it stands to reason that "adaptive functioning" in the capsule definition must be broader than the specific requirements for proving "mental retardation" in Listing 12.05(D).[2] Otherwise, § 12.05(D) would be redundant.

In fact, the regulations do not define "adaptive functioning" as used in the capsule definition. Both Plaintiff and the Commissioner refer to the definition of "adaptive functioning" set forth by the American Psychiatric Association in the 2000 revised edition of *Diagnostic and Statistical Manual of Mental Disorders*.[3] The DSM-IV-

---

[2] Listing 12.05(D) requires a valid verbal, performance of full scale IQ score of 60 through 70 resulting in at least two: marked restrictions of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

[3] Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. text rev. 2000)) (DSM–IV-TR). As Plaintiff notes, the DSM-IV-TR was still in effect when the ALJ made his decision. The DSM-V was released in May 2013.

TR states that "[a]daptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." *Id.* at 41. To meet the DSM–IV-TR definition, an individual would exhibit "significant limitations in adaptive functioning in at least two of the following skills areas: communication, self-care, home living, social/interpersonal skills, use of community resource, self-direction, functional academic skills, work, leisure, health, and safety." *Id.* The ALJ did not identify the presence or absence of "significant limitations" in any of these skill areas.

The record clearly establishes significant limitations in Plaintiff's ability to communicate; Plaintiff reads at the third grade level; and his verbal IQ score of 69 is within the range required to demonstrate mental retardation. (TR. 270). The record also supports a finding of significant limitations in the areas of functional academic skills and work skills. Plaintiff was enrolled in special education classes but did not finish high school. (TR. 40). School records demonstrate he consistently made low grades in subject matter classes. (TR. 233-242). Moreover, the ALJ, himself, determined Plaintiff has been unable to hold down any job long enough for the work to qualify as "substantial gainful activity." (TR. 23; 52).

The evidence supporting a finding that Plaintiff's mental and physical impairments are sufficiently severe to meet Listing 12.05(C), is overwhelming compared to the evidence supporting the ALJ's decision. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion) (citing *Ray v. Bowen*, 865 F.2d 222, 224

(10th Cir. 1989)). Moreover, the ALJ's legal analysis of the factors included in Listing 12.05(C) is insufficient. Thus remand is required.

## CONCLUSION

The decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this opinion. Judgment will be entered accordingly.

**ENTERED** on October 9, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE